# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA ROWLAND, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CERTAINTEED CORPORATION, et al.,: | | No. 08-3671 |
| Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                 **May 21, 2009**

Patricia Rowland sued Defendants CertainTeed Corporation and Saint-Gobain Corporation, which is a publicly held corporation whose holding company is the parent of CertainTeed, alleging Title VII gender discrimination and a violation of the Equal Pay Act. Rowland charges that Defendants failed to promote her and eventually fired her because she is a woman. The parties dispute the scope of Rowland's failure to promote claim, as Rowland claims that the Lilly Ledbetter Fair Pay Act ("Ledbetter Act") extends her failure to promote claims beyond the 300-day statute of limitations. Before the Court is Defendants' summary judgment motion. For the reasons below, the Court grants in part, and denies in part, the motion. Specifically, the Court finds that Plaintiff has presented evidence sufficient to proceed to a jury on her termination claim and her most recent failure to promote claim. However, the Court holds that Rowland's remaining failure to promote claims are time-barred. These claims are not saved by the Ledbetter Act because a failure to promote claim divorced from a discriminatory compensation claim, as is the case here, does not fall within the purview of that newly enacted law. Plaintiff's Equal Pay Act claim fails on the merits.

I.      **BACKGROUND**

CertainTeed makes building products.  (Defs.' Statement of Undisputed Facts [Defs.' SOF]

¶ 1.)  The company is divided into approximately ten business units, and each unit maintains its own

marketing department.  (*Id*. ¶ 2.)

Rowland began her career at CertainTeed in 1997.  (*Id*. ¶ 5.)  She started out as a manager

in the sales support group and was promoted to director in 2001.  (Pl.'s Counter-Statement of

Uncontested Facts [Pl.'s Counter SOF] ¶ 20.)  At the time of her termination in October of 2007, she

was the Building Solutions/Sales Support Director of the Corporate Marketing Department.  (Defs.'

SOF ¶ 5.)  In this capacity, Rowland managed the building solutions program, a call center that

responds to technical inquiries about CertainTeed's products and generates leads for the sales force.

(*Id*.)  She also managed the sales support program, a marketing program that provides builders,

remodelers and architects with incentive to use CertainTeed products.  (*Id*.)

In the early to mid-2000's, Rowland reported to Jay Doubman and later to Alison Barlaz, each

of whom held the position of director, business development.  (Defs.' SOF ¶ 10.)  After Barlaz

moved out of that position, the CEO of CertainTeed, Peter Dachowski, sought to create a corporate

marketing department for the entire company and a chief marketing officer position to manage the

department.  (*Id*. ¶¶ 3, 12.)  The position was not posted.  (*Id*. ¶ 13.)  The corporate marketing

department was ultimately created in 2006 and was first headed by Fred Vapenik, whose title was

Chief Marketing Officer.  (*Id*. ¶ 4.)  Vapenik's tenure as Chief Marketing Officer was short-lived –

he was terminated on or about April 2, 2007.  (*Id*. ¶ 16.)  The CEO decided that the next head of the

corporate marketing department should be more tactical and have extensive marketing and

CertainTeed business unit experience.  (*Id*. ¶ 17.)  Again, this position was not posted.  (*Id*. ¶ 18.)

2

The parties dispute whether Rowland was considered for this position after Vapenik's departure. Defendants claim that she was considered for the job but not selected because she lacked experience running a business unit marketing department. (*Id*. ¶ 20.) Rowland claims that before she could even express interest in the job, David Bomzer, Vice President of Human Resources, told her that two people were being considered for the job and she was not one of them. (Pl.'s Opp'n to Defs.' Statement of Uncontested Facts [Pl.'s Opp'n to Defs.' SOF] ¶¶ 19-20.) Eventually, Eric Nilsson was hired as the Vice President of Marketing. (Defs.' SOF ¶ 22.)

At the time Nilsson joined the corporate marketing group in 2007, the building materials industry was "forecasting a downward turn." (*Id*. ¶ 24.) Nilsson was therefore instructed to make cuts. (*Id*. ¶ 25.) According to Nilsson, the individuals who reported to Rowland (and her counterpart, Marsha Holt) were capable individuals and required little day-to-day supervision from Rowland. (*Id*. ¶ 26.) Nilsson therefore decided to reduce costs and increase efficiency and productivity in the department by eliminating Rowland and Holt's middle management positions and having the more junior persons in the department report directly to him.[1] (*Id*. ¶ 27.) Nilsson estimated that these moves would save at least $300,000. (*Id*. ¶ 28.) Rowland and Holt were fired on October 26, 2007. (*Id*. ¶ 30.) The corporate marketing department has taken other cost-cutting measures since 2007, including ending a partnership with NASCAR, electing not to fill three voluntarily vacated corporate marketing positions, and reducing CertainTeed's participation at trade shows. (*Id*. ¶ 29.) However, other costs at CertainTeed increased subsequent to Rowland and Holt's terminations. (Defs.' Resp. to Pl.'s Counter-Statement of Uncontested Facts ¶¶ 8-10.)

---

[1] Rowland denies that these were the actual reasons for her termination. (Pl.'s Opp'n to Defs.' SOF ¶¶ 26-27.)

In October of 2007, following Rowland's termination, Bomzer offered her a temporary position in CertainTeed's fiber cement division.  (Defs.'SOF ¶ 31.)  The position was slated to last for a number of months but would terminate when Barlaz, Rowland's former supervisor, returned from maternity leave.  (*Id*. ¶ 32; Pl.'s Opp'n to Defs.' SOF ¶¶ 32-33.)  Rowland turned down the offer.  (Pl.'s Opp'n to Defs.' SOF ¶ 35.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).  When evaluating a motion brought under Rule 56(c), a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.  *Anderson*, 477 U.S. at 255; *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  A court must, however, avoid making credibility determinations or

weighing the evidence.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also*

*Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).


**III.   DISCUSSION**

**A.   Rowland's Title VII Termination Claim**

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers "to fail or refuse

to hire or to discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges or employment, because of such

individual's race, color, religion, sex or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1) (2009).

Absent direct evidence of discrimination, Rowland's Title VII claim that she was terminated based

on her gender is analyzed under the familiar *McDonnell Douglas* framework.  *See Scheidemantle*

*v. Slippery Rock Univ. St. Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).  First, Plaintiff

must establish a *prima facie* case of gender discrimination by demonstrating that:  (1) she was a

member of a protected class; (2) she was qualified for the position to which she applied; and (3)

another person, not in the protected class was treated more favorably.  *See id*.  Establishing a *prima*

*facie* case is not an onerous task.  *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523

(3d Cir. 1993) ("Because the prima facie case is easily made out, it is rarely the focus of the ultimate

disagreement.").   Once a Plaintiff has established a *prima facie* case, the burden shifts to the

employer to articulate a "legitimate nondiscriminatory explanation for the employer's adverse

employment action."  *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 698 (3d Cir. 1995).  The

employer's burden at this second step is "relatively light" and is satisfied upon a showing of "any

legitimate reason for the [adverse employment action]; the defendant need not prove that the

articulated reason actually motivated the [adverse employment action]." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the employer offers a legitimate reason for its action, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for actual discrimination. *Scheidemantle*, 470 F.3d at 539.

Defendants do not claim that Plaintiff failed to establish a *prima facie* case with respect to her termination, apparently conceding the issue for purposes of their summary judgment motion. Turning to step two, Defendants claim that their decision to fire Rowland was made to cut costs and increase efficiency. (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. [Defs.' Mem.] at 10.) Rowland claims that Defendants have not satisfied their burden under step two of the *McDonnell Douglas* test because they failed to produce documents supporting their proffered reasons for her termination. (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 11.)

The Court concludes that Defendants have presented a legitimate, non-discriminatory reason for firing Rowland. Without question, cutting costs is a legitimate, non-discriminatory reason for terminating an employee. *See, e.g.*, *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 n.17 (3d Cir. 1990); *Klinman v. JDS Uniphase Corp.*, 439 F. Supp. 2d 401, 408 (E.D. Pa. 2006). Defendants have put forth evidence indicating that just before Rowland was terminated, the company needed to make cuts due to downward trends in the building materials industry. (Defs.' SOF ¶ 24.) Additionally, Defendants produced evidence that Nilsson was instructed to cut costs and that the company eliminated positions, ended its participation in NASCAR, reduced its presence at trade shows, and elected not to fill voluntarily vacated corporate marketing positions. (*Id*. ¶¶ 25, 29.) Furthermore, the record contains evidence that CertainTeed wished to streamline its operations, which is certainly a valid, non-discriminatory reason to fire someone. (*Id*. ¶¶ 26-27.) Given that Defendants, at this

6

stage, need only produce admissible evidence that would allow a jury to conclude that they did not

act out of discriminatory animus, Defendants have met their burden.

Thus, this case comes down to pretext.  A plaintiff may show pretext by producing evidence

from which a factfinder could reasonably either disbelieve the employer's articulated legitimate

reasons or believe that an invidious discriminatory reason was more likely than not a determinative

or motivating cause of the employer's action.  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Thus, if a plaintiff makes out a *prima facie* case, he or she may defeat a motion for summary

judgment by either: (1) "discrediting the proffered reasons, either circumstantially or directly;" or

(2) "adducing evidence, whether circumstantial or direct, that discrimination was more likely than

not a motivating or determinative cause of the adverse employment action."  *Id*.  If the plaintiff

provides evidence sufficient to discredit the defendant's proffered reasons, she need not also present

additional evidence of discrimination beyond her *prima facie* case.  *Id*.

According to Defendants, Rowland cannot withstand summary judgment because she has

merely questioned the wisdom of CertainTeed's decision and suggested that her strong performance

should have saved her from termination, even if a need for cost-cutting existed.  (Defs.' Mem. at 12.)

Defendants correctly note that courts may not second guess the business judgment of employers.  *See*

*Ezold*, 983 F.2d at 527.  Furthermore, Plaintiff cannot survive summary judgment by simply

asserting that her performance did not warrant dismissal.  But that is not what Plaintiff has done here.

Rather, Rowland contends that CertainTeed began adding persons and increasing costs almost

immediately after firing her, contrary to its assertion that it needed to cut costs.

This Court need not delve into the wisdom of cost-cutting at CertainTeed.  However,

Rowland has put forth evidence that although CertainTeed asserted the need to cut costs, it actually

increased costs.  After Rowland was fired, Mike Loughery was promoted to director of corporate marketing communications and received a raise.  (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. [Pl.'s Br.] Ex. C [Nilsson Dep.] at 89-90.)  The company also created a new position to launch their new website and transferred two building scientists from the insulation group to corporate marketing. (Nilsson Dep. at 91-92, 96.)  Nilsson also hired Aman Desouza in November of 2008 to fill the newly created position of director of innovation and sustainability.  (Nilsson Dep. at 87-89.)  All told, Plaintiff contends that salaries in the department actually increased following her termination, a point that Defendants acknowledge.  (Pl.'s Br. at 13; Defs.' Resp. to Pl.'s Counter-Statement of Uncontested Facts ¶¶ 8-10.)

Of course, Defendants challenge the import of these facts and the record contains evidence to support their side of the story.  For instance, Nilsson testified that a number of persons left the company or were transferred after Rowland's termination.  Because people left the department, it maintained approximately the same number of individuals after Rowland was fired.  (Defs.' Reply Mem. in Support of Mot. for Summ. J. [Defs.' Reply] at 4.)  Defendants also contend that the fact that salaries were up again by January of 2009 is irrelevant to Rowland's firing given that cuts were made at the time of her termination over a year earlier.  (*Id*. at 7.)

A jury may credit Defendants' evidence, but Plaintiff has satisfied her burden on summary judgment by providing evidence that discredits Defendants' proffered reasons for their actions.  *See Fuentes*, 32 F.3d at 764.  The addition of salary and costs at a minimum calls into question whether Rowland was fired to cut costs.  According to Defendants, the company was required to soldier on without Rowland, continuing to make personnel and salary decisions.  She cannot nitpick those choices and contend they provide evidence of discrimination.  This is a correct statement of the law.

8

But carried to the length Defendants seek to carry it, the *McDonnell Douglas* inquiry would end if an employer put forth a legitimate, non-discriminatory reason for its actions. The inquiry does not end there, and a Plaintiff is afforded the chance to call into question the employer's legitimate, non-discriminatory reason for its decision. That necessarily entails examining the employer's decision.

Rowland has put forth evidence that the company did not cut costs – Defendants countered with evidence that they did. The Court thus faces a genuine issue of material fact that a jury must decide. This Court cannot and will not determine whether CertainTeed needed to take cost-cutting measures, but Plaintiff has at a minimum put forth evidence that would allow a factfinder to conclude that while Defendants claimed they needed to cut costs, their actions belie that claim.[2] That is all that Plaintiff needs to do to defeat a summary judgment motion.

**B.      Rowland's Title VII Failure to Promote Claims**

>        *1.      Statute of Limitations*

As a threshold matter, the parties dispute the scope of Plaintiff's failure to promote claim. According to Defendants, Plaintiff filed her EEOC charge on or about December 12, 2007. Because the law requires one to file such a charge within 300 days of the employment decision, Rowland may only bring a lawsuit for a failure to promote that occurred on or after February 16, 2007 – 300 days prior to when she filed her EEOC claim. (Defs.' Mem. at 15-16.) The only position that Rowland sought during the relevant period was that of vice president of corporate marketing, a position filled

---

[2] Plaintiff also suggests that although the industry expected an economic downturn, her department was doing significantly better than expected and brought millions of dollars into the company. (Pl.'s Counter-Statement of Uncontested Facts ¶ 3.) By focusing on the decision to fire Rowland in relation to the performance of her department, Rowland is asking this Court to examine the wisdom of CertainTeed's business judgement. The Court declines the invitation; where cuts were made within the company is a decision best left to management, not courts.

by Nilsson around May of 2007.  (*Id.*)  Defendants thus contend that any other claims for failure to promote are time-barred.  Plaintiff contends that those claims are not time-barred because they demonstrate a pattern of discrimination.  (Pl.'s Br. at 17-19.)  She also claims that the recently enacted Ledbetter Act allows her to introduce evidence of discriminatory acts that occurred outside of the 300-day time period and permits her to seek damages for "other instances of similar discrimination which took place outside the limitations period." (*Id.* at 18.)

Ordinarily, a Title VII plaintiff must file a timely charge with the EEOC before bringing a lawsuit in federal court.  A plaintiff must file a charge of employment discrimination with the appropriate agency within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995).  Congress passed the Ledbetter Act in response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007).  In *Ledbetter*, the Supreme Court concluded that the charging period for complaining about a discriminatory practice commences upon the occurrence of a discrete unlawful practice.  It does not renew upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from past discrimination.  *Id.* at 628.

The Ledbetter Act changed the landscape somewhat.  Under the Ledbetter Act, an unlawful employment practice occurs

> with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

29 U.S.C. § 626(d)(3) (2009).  However, the Ledbetter Act does not help Plaintiff here because she

10

pressed no discriminatory compensation claim with respect to her failure to promote. *Leach v. Baylor Coll. of Med.*, Civ. A. No. 07-0921, 2009 WL 385450, at *17 (S.D. Tex. Feb. 17, 2009) ("The Fair Pay Act of 2009 only affects the *Ledbetter* decision with respect to the timeliness of discriminatory compensation claims."). "The rule set out in *Ledbetter* and prior cases-that 'current effects alone cannot breathe new life into prior uncharged discrimination'-is still binding law for Title VII disparate treatment cases involving discrete acts other than pay." *Id*.; *see also Vuong v. New York Life Ins. Co.*, Civ. A. No. 03-1075, 2009 WL 306391, at **7-9 (S.D.N.Y. Feb. 6, 2009) (applying Ledbetter Act to discriminatory compensation claim but holding failure to promote claims time-barred).

Plaintiff's argument based on the Ledbetter Act assumes that it applies to her claims, but she cites no case law on the point. Rather, she merely notes that "[l]ike Ms. Ledbetter's continuing claims for discriminatory pay, Ms. Rowland was subject to ongoing discriminatory denial of the promotion to the Position." (Pl.'s Br. at 19.) But, as the statement above recognizes, Ledbetter's claim was based on allegations of discriminatory pay, hence the limitation contained in the statute: "with respect to discrimination in compensation." Here, Rowland's failure to promote claim is not based on a discriminatory compensation claim. Furthermore, her argument would eliminate any statute of limitations with respect to reporting discrimination to the appropriate agency, a change in law not found in the Ledbetter Act.

Rowland also contends that because she has alleged a continuing pattern of violations, she may include in her lawsuit claims that occurred outside the limitations period. Plaintiff is wrong. Each promotion that she claims she was passed over for constitutes a discrete act subject to the 300-day statute of limitations. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)

(noting that a failure to promote qualified as "discrete act[]" constituting a separate unlawful discriminatory practice and that plaintiff "can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."); *see also Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 483-84 (3d Cir. 1997) (failure to promote was discrete instance of alleged discrimination to which continuing violation analysis was inapplicable).   Thus, the only failure to promote claim properly before this Court relates to the position filled by Nilsson.

### 2.    Merits of the Claim

Rowland's failure to promote claim is analyzed using the *McDonnell Douglas* framework. Defendants do not address Rowland's *prima facie* case and for purposes of this claim, the Court will assume that Plaintiff has met her initial burden.   Defendant has met its burden of setting forth a legitimate, non-discriminatory reason for hiring Nilsson rather than Rowland – Rowland's lack of experience working in a CertainTeed business unit.   (Defs.' Mem. at 17.)

Plaintiff contends that Defendants' proffered reason is a pretext for gender discrimination. To support her position, she contends that before Nilsson held the position, two women and one man held it.   For the females who held it, the position was given a title of director.   When a male was in the job, however, the position was entitled vice president.   (Pl.'s Counter-Statement of Uncontested Facts ¶¶ 24-29.)   Each time the position became vacant, Rowland sought to fill the job but she was not considered although "[s]he performed the primary functions of the Position and received high praise and accolades from the CEO for her work."   (*Id*. ¶¶ 31-33.)   According to Rowland, whenever she approached Bomzer about the job he presented a different excuse for why she was not qualified, although CertainTeed would then fill the position with an individual who also did not possess the characteristic Bomzer claimed was required for the job.   (*Id*. ¶¶ 34-41.)   For example, she claims that

Bomzer told her that she could not add value to the position, or that the position required a bilingual person with multiple degrees, or that the successful candidate would be required to relocate.  But the candidates who filled the position did not fit these requirements.  Prior to Nilsson being hired to fill the position, Bomzer told Rowland that she would need to be "tested" in a business unit before she could be considered for the job.  (Pl.'s Counter-Statement of Uncontested Facts ¶ 42.)  She was never offered a position in a business unit until one month prior to her termination, when she was offered a temporary position in the Fiber Cement Group.  (*Id*. ¶¶ 43-44.)

Although Rowland can only potentially recover for CertainTeed's failure to promote her to the position that Nilsson occupied, the Court finds Defendants' actions regarding previous job openings relevant to that claim.  If a jury were to credit Rowland's side of the story, it could find that CertainTeed repeatedly pulled the chair out from under her each time she sought to move up in the company.  Accordingly, a jury could find Defendants' proffered reason for not promoting Rowland less than credible.  Although Defendants contend that the position Nilsson occupied differed from those for which Rowland was previously passed over and that Rowland was considered for the job that Nilsson eventually occupied, the record reveals a genuine issue of material fact as to these matters.  Interestingly, two of the persons who filled the position were women.  That fact, however, goes to the strength of Rowland's claim and not whether she can get that claim to a jury, particularly because the position for which Rowland can potentially recover was filled by a man and the decision-maker appears to have been a man.

## C.     Rowland's Equal Pay Act Claim

Claims brought under the Equal Pay Act, 29 U.S.C. § 206 et seq., are analyzed under a two-step burden-shifting framework.  *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).  First,

the plaintiff must establish a *prima facie* case by showing that employees of the opposite sex were paid differently for performing "equal work" – that is, work of substantially equal skill, effort and responsibility, under similar working conditions. *Id*. (citing *E.E.O.C. v. Del. Dept. of Health & Soc. Servs.*, 865 F.2d 1408, 1413-14 (3d Cir. 1989)). If the plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the employer to demonstrate the applicability of one of the four affirmative defenses enumerated in the Equal Pay Act. *Id*. These defenses are: (1) a bona fide security system; (2) a merit system; (3) a system that measures earning by quantity or quality of production, or (4) a differential based on a factor other than sex. *Id*. at 107 n.6. At trial, the employer must prove at least one affirmative defense "'so clearly that no rational jury could find to the contrary.'" *Id*. at 107 (quoting *Del. Dept. of Health*, 865 F.2d at 1414). It is not enough that the employer's proffered reasons could explain the wage disparity; the proffered reasons must in fact explain the wage disparity. *Id*. at 108. ("[W]here, as here, employers seek summary judgment as to the Equal Pay Act claim, they must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains.").

The plaintiff may not rely on job titles or descriptions in establishing an Equal Pay Act claim; the inquiry is focused on whether actual job performance or job requirements are sufficiently distinct. *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 155 (3d Cir.1985) (internal citations omitted); *see also Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164, 1171 (3d Cir.1977). "The crucial finding on the equal works issue is whether the jobs to be compared have a 'common core' of tasks, i.e. whether a significant portion of the two jobs is identical." *Brobst*, 761 F.2d at 156. Thus, whether two jobs qualify as equal work depends on whether tasks associated with those jobs make the

character or the content of the work substantially similar or substantially different.  *Id*.

Plaintiff claims that she received less compensation than similarly situated males and that similarly situated males became eligible for bonuses before she did.  More specifically, she notes that on April 1, 2005, Andrew Brandt earned $100,719 a year as a marketing manager, while Rowland earned $103,000 as a director.  She also claims that when Brandt was promoted to director in February of 2007, his salary increased to $114,000, more than Rowland ever made.  (Pl.'s Br. at 22-23.)  She also claims that Christopher Bourque, a similarly situated male marketing director, was classified as a Band I employee since 2000, when he was made a director, while Rowland was required to wait a year before she received a band level increase and even then she never reached the Band I level.  The higher band level entitled the employee to a higher bonus structure.  (*Id*.)

Defendants are entitled to summary judgment on Plaintiff's Equal Pay Act claim.  Plaintiff cannot merely point to two male employees, assert that they are similarly situated to her, and survive summary judgment.  Although Plaintiff has included salary information and job titles for Brandt and Bourque, as well as salary ranges over the years for various bands, the Court has no way to compare the job duties and determine if Brandt and Bourque performed work similar to Rowland.  *See Brobst*, 761 F.2d at 155 ("[T]he relevant issue is not the name under which the position was classified but what was actually done.").  Instead, Rowland makes much of the titles attributed to their various positions.  But Rowland cannot rely on job titles to survive summary judgment.  The law does not demand that all persons with the title of "director" within a company must earn the same salary and the Court cannot assume that directors and managers should earn a certain salary.  This Court cannot divine from the record whether these employees performed a common core of tasks and thus Plaintiff cannot make out an Equal Pay Act claim.  Similarly, this Court is left to guess at why different

15

employees found themselves in different bands and therefore earned different bonuses.  Furthermore, it appears as though the salary bands overlapped and those in supposedly lower bands could have earned more than those in supposedly higher bands.  Plaintiff's argument is further undercut by the fact that Marsha Holt earned over $140,000 as Director of Marketing Services, more than Rowland, Brandt, or Bourque.  (Pl.'s Br. Ex. J [Holt salary information].)  Based on the record before this Court, Plaintiff has failed to establish a *prima facie* case under the Equal Pay Act.


**IV.     CONCLUSION**

For the reasons above, the Court grants in part, and denies in part, Defendants' motion for summary judgment.  An appropriate Order will be docketed with this Memorandum.